SO ORDERED.

Dated: March 28, 2019



*Madeleine C. Wanslee*
**Madeleine C. Wanslee, Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>**ROBERT and MARGARITA RIVERA,**<br><br>Debtors. | Case No. 2:13-bk-20842-MCW<br><br>Chapter 13<br><br>**ORDER DENYING TRUSTEE'S MOTION TO DISMISS BANKRUPTCY CASE DUE TO PLAN DEFAULT** |

Chapter 13 Trustee Russell Brown ("Trustee Brown") filed a *Motion to Dismiss* ("Motion") this bankruptcy case under 11 U.S.C. § 1307(c)(6) of the Bankruptcy Code.[1] Even though he has received and disbursed all payments that the plan required that his office receive, Trustee Brown argues that Debtors Robert and Margarita Rivera defaulted on a material term of their confirmed plan by not making all their direct post-petition mortgage payments, rendering them ineligible for a discharge under 11 U.S.C. § 1328(a). The Court concludes that Debtors' failure to pay all their direct post-petition mortgage payments is not a failure to complete all payments required under the plan. Having completed all required plan payments and performed all other obligations under the Code and Rules and there are no indicia of wrongdoing, Debtors are now entitled to their Chapter 13 discharge. Accordingly, the Motion is denied.

---

[1] Unless otherwise indicated, all chapter, code, and rule references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

1

This matter is a core proceeding which the Court may hear and determine under 28 U.S.C. § 157(b)(2)(A). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b).

**I.  BACKGROUND**

Debtors filed this Chapter 13 case on December 4, 2013. Using the mandatory Arizona Model Form Plan they filed an *Amended Chapter 13 Plan* on July 18, 2014 that proposed to pay varied amounts per month for 39 months to be distributed to their secured, priority and general unsecured creditors ("Amended Plan"). Dkt. No. 39. Debtors' mortgage lender RoundPoint Mortgage was to be paid pre-petition arrears of $15,571.89 on the mortgage on a *pro rata* basis from payments Debtors made to Trustee Brown. Section (c)(4) of the Amended Plan provided "[u]nless stated below, Debtor is to pay post-petition payments direct to the creditor and pre[-]petition arrearages shall be cured through the Trustee." That same section contains a heading titled "Post-Petition Mortgage Payments" with two alternative boxes from which Debtors may select that read "☐ Debtor will pay direct to creditor; or ☐ Included in Plan payment. Trustee will pay creditor." Debtors checked the first box obligating them to make direct payments and stated that their monthly post-petition mortgage payments were $851.27.[2]

The Amended Plan was approved on November 10, 2014 through the *Stipulated Order Confirming First Amended Chapter 13 Plan* ("Confirmation Order"). Dkt. No. 50. Counsel for RoundPoint Mortgage signed off on the Confirmation Order showing its approval "as to form and content." Section (C)(2) of the Confirmation Order concerned RoundPoint Mortgage's claim

---

[2] The actual Amended Modified Plan provision is:

> Post-Petition Mortgage
> Payments
> 851.27
> ■ Debtor will pay direct to creditor; or
> ☐ Included in Plan payment. Trustee will pay creditor.

secured by real property and stated, "Regular post-petition payments will be made directly by the Debtors to the secured creditor."

Debtors later filed an *Amended Modified Chapter 13 Plan* on July 28, 2016 ("Amended Modified Plan") again using the mandatory Arizona Model Form Plan. Dkt. No. 62. RoundPoint Mortgage's treatment did not change.

On October 28, 2016, in compliance with Rule 3002.1(f), Trustee Brown filed a *Notice of Final Cure Payment for Prepetition Arrears on Mortgage Claim* indicating that all pre-petition arrears owing to RoundPoint Mortgage had been paid ("First Cure Notice). Dkt. No. 70. The First Cure Notice supplied a history of payments by Trustee Brown to RoundPoint Mortgage and stated that it was filed to "assist the creditor in reconciling the claim." It also directed RoundPoint Mortgage to file a supplement to its proof of claim indicating its agreement with whether the pre-petition default had been cured and whether the post-petition payments were current, along with an itemized statement of any unpaid amounts.[3] RoundPoint Mortgage did not file a response to the First Cure Notice.

The Amended Modified Plan was approved without objection on November 28, 2016 through the *Stipulated Order Confirming Amended First Modified Chapter 13 Plan* ("Final Confirmation Order"), which, among other things, extended the plan duration to 41 months. Dkt. No. 76. As to RoundPoint Mortgage, Section (C)(2) of the Final Confirmation Order again stated that "Regular post-petition payments will be made directly by the Debtors to the secured creditor."

---

[3] Trustee Brown's First Cure Notice stated that RoundPoint Mortgage was:
> obligated to file with the Bankruptcy Court and serve a statement as a supplement to its proof of claim indicating: (1) whether it agrees that the Debtors have paid in full the amount requited to cure default on the claim; and (2) whether the Debtors otherwise are current on all post-petition payments consistent with § 1325(b)(5) of the Code. The statement shall itemize the required cure or post-petition amounts, if any, that the holder of the claim contends remains unpaid as of the date of the statement. After filing of the statement by the holder of the claim, the Trustee does not intend to file a motion pursuant to rule 3002.1(h), but the Debtors are entitled to do so.

3

Trustee Brown filed another *Notice of Final Cure Payment for Prepetition Arrears on Mortgage Claim* on April 17, 2018 ("Final Cure Notice"). Dkt. No. 81. The Final Cure Notice again supplied a history of payments by Trustee Brown to RoundPoint Mortgage and directed it to file a supplement to its proof of claim indicating its agreement with whether the pre-petition default had been cured and whether the post-petition payments were current, along with an itemized statement of any unpaid amount.

On May 1, 2018, the creditor filed the response required by Rule 3002.1(g), *Response to Trustee's Notice of Final Cure for Prepetition Arrears on Mortgage Claim*, agreeing that the pre-petition default was cured, but stating that the post-petition payments due on and after September 1, 2017 were delinquent. Dkt. No. 82. The Response did not attach the required itemized statement of the unpaid amounts.

According to the *Trustee's 2018 Annual Status Report*, a mortgage default occurring on September 1, 2017 would be approximately 44 months into the bankruptcy case. Dkt. No. 86. The only payment shown on the 2018 Annual Report was $6.22 made on October 13, 2017. However, the plan payments were noted as "current" because Trustee Brown's office had received all scheduled payments.

Thereafter, Trustee Brown filed the Motion, which Debtors did not oppose in writing. However, Debtors' counsel appeared at the hearing and argued that the case should not be dismissed because Debtors made all payments to be made through the Trustee. RoundPoint Mortgage did not file any papers or appear at the hearing, despite receiving notice.

At the hearing, Trustee Brown discussed the recent emergence of decisions in other districts granting similar motions and indicated that his goal was to obtain guidance from the Court on this issue.

. . .

. . .

4

## II.  DISCUSSION AND ANALYSIS

A Chapter 13 discharge is intended to be a "discharge of all debts," barring a few enumerated exceptions. 11 U.S.C. § 1328(a). A "long term" mortgage debt treated under § 1322(b)(5) is a statutory exception to discharge. 11 U.S.C. § 1328(c). Bankruptcy proceedings are intended to grant debtors a "fresh start," *Grogan v. Garner*, 498 U.S. 279, 286 (1991), and, as a result, the Bankruptcy Code "is to be construed liberally in favor of debtors," *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985). Moreover, in that Chapter 13 is the preferred route for personal bankruptcy, "[a] discharge under Chapter 13 'is broader than the discharge received in any other chapter.'" *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 268 (2010) (quoting 8 COLLIER ON BANKRUPTCY ¶ 1328.01, p. 1328–5 (rev. 15th ed. 2008)).

To receive a discharge under § 1328(a), Debtors must complete all payments under their Plan.[4] Trustee Brown's Motion asserts that all post-petition mortgage payments, whether paid directly by Debtors or disbursed through the Plan, constitute "payments under the plan*.*" He also contends that if these direct payments are delinquent, Debtors *may not* be discharge eligible and that the case may be dismissed under Section 1307(c)(6).[5] In support of his position, Trustee Brown cites to *Matter of Kessler*, 655 Fed.App'x 242 (5th Cir. 2016); *In re Thornton*, 572 B.R. 738 (W.D. Mo. 2017); *In re Gonzales*, 532 B.R. 828 (Bankr. Colo. 2015); *In re Heinzle*, 511 B.R. 69 (Bankr. W.D. Tex. 2014); and *In re Russell*, 458 B.R. 731 (Bankr. E.D. Va. 2010).[6]

---

[4] Section 1328(a) provides, in relevant part, "Subject to subsection (d), as soon as practicable after completion by the debtor of *all payments <u>under</u> the plan* ... the court shall grant the debtor a discharge...." 11 U.S.C. § 1328(a) (emphasis added).

[5] Section 1307(a)(6) provides, in relevant part, "the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including ... material default by the debtor with respect to a term of a confirmed plan." 11 U.S.C. § 1307(c)(6).

[6] More recently, the Eleventh Circuit has weighed in on this topic, holding that reference to mortgage debts in a debtor's confirmed Chapter 13 plan, when the plan specified that mortgage debts would be paid outside the plan, was not "providing for" these mortgage debts, as required for the debts to be discharged upon completion of debtor's payments under the plan, where plan did not set repayment terms for the creditor's mortgage, identify a repayment schedule, or otherwise mention the mortgage. *Dukes v. Suncoast Credit Union* (*In re Dukes*), 909 F.3d 1306 (11th Cir. 2018). That analysis has been criticized by some of consumer bankruptcy's leading commentators. For example,

A few months before Trustee Brown filed his Final Cure Notice, Debtors defaulted on their post-petition mortgage obligation. As noted, paragraph (C)(2) of Debtors' Final Confirmation Order provides that "regular post-petition payments will be made directly by the Debtors to the secured creditor." So, the issue is whether by failing to pay these direct payments, Debtors have also failed to complete all payments required under the Plan and are therefore not entitled to a Chapter 13 discharge.

**A. "Payments Under The Plan"[7] Means Payments Made To The Trustee**

Several recent cases dealing with the consequences of direct pay defaults in Chapter 13 cases have caused a split in authority. There is no controlling case law on this matter in the Ninth Circuit. Without clear direction on the matter, this Court is free to consider the pros and cons of each approach and to fashion a result that is consistent with the intent of the Bankruptcy Code.

The majority position is that "payments under the plan" refers to any payment made pursuant to a Chapter 13 plan, regardless of whether a debtor makes such payment directly to the creditor or through the trustee. *See Simon v. Finley (In re Finley)*, No. AP 18-4011, 2018 WL 4172599, at *2 (Bankr. S.D. Ill. Aug. 28, 2018) (referring to the above cited cases relied upon by Trustee Brown as supporting the majority position). Despite the *Finley* court's holding, it refused to vacate the discharge under the facts of that case, finding that the trustee's complaint was not well taken because he knew that the debtors' statement about having made all payments was "false" in ample time to object to the entry of discharge.

The minority position is found in *In re Gibson*, 582 B.R. 15 (Bankr. C.D. Ill. 2018) (debtor's direct payments on a nonmodifiable, nondischargeable residential mortgage loan were not "payments under the plan" that had to be completed for debtor to be entitled to discharge).

---

Hon. Keith M. Lundin, ret. described the Eleventh Circuit's analysis of direct payment of debt as "mangled" due to "misunderstanding the history and structure of Chapter 13." Lundin on Chapter 13 / Ch13online Bulletin, available at www.LundinOnChapter13.com (last visited March 28, 2019).

[7] Discussion of this issue is further complicated by the various and sometimes inconsistent uses of similar phrases such as "inside the plan," "outside the plan," "through the plan," "provided for by the plan," etc.

While both lines of cases are well reasoned, this Court agrees with *Gibson* as more closely reflecting the language of the Code, the purposes of Chapter 13, and the intent behind Rule 3002.1.

The meaning of "payments under the plan" has led to conflicting interpretations. The Bankruptcy Code is silent with respect to when the "completion . . . of all payments under the plan" occurs for purposes of discharge under § 1328(a). Keith M. Lundin and William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 343.1, at ¶ 2, Sec. Rev. July 22, 2004, www.Ch13online.com (last visited March 28, 2019). However, reading the words in the context of chapter 13 as a whole brings clarity to the meaning and confirms that such words should only refer to the debtor's payments *paid to the trustee* pursuant to the plan's terms. David Cox, *Don't Move the Goalposts – Section 1328 Should Not Deny Discharge to Debtor Who Completes Payments to Trustee, but Is Behind on Direct Payments*. 37 Am. Bankr. Inst. J. 20 (May 2018).

As explained in *Gibson*, "provided for by the plan" and "payments under the plan" should mean two different things. The phrase "under the plan" is a narrow term:

> allowing for the possibility that not all creditors holding debts provided for by the plan are receiving payments under the plan. There may be some payments made to creditors who are provided for by the plan that are not payments under the plan. The most logical line of demarcation is between payments made by the trustee from funds received from the debtor versus payments made by the debtor direct to a creditor. It follows that the resolution of the difference in phraseology is to construe the requirement under section 1328(a) of "completion by the debtor of all payments under the plan," to mean the payments that the debtor is required to make to the trustee.

*Gibson*, 582 B.R. at 19. This interpretation is consistent with how the Bankruptcy Code has been implemented and how these words are interpreted elsewhere in Chapter 13. For example, Section "1325(b) requires the plan to provide that all of the debtors' projected disposable income 'to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make *payments under the plan*.' These payments applied to make 'payments

7

Case 2:13-bk-20842-MCW    Doc 89    Filed 03/28/19    Entered 03/29/19 10:44:17    Desc
Main Document    Page 7 of 19

under the plan' are the debtor's payments paid to the trustee, so that they can be distributed to allowed claimants." 11 U.S.C. § 1325(a)(b) (emphasis added); 37 Am. Banker. Inst. J. at 52.

Further, as Judge Perkins recognized in *Gibson*, § 1329(a) requires that any modification of a plan after confirmation be filed "before the *completion of payments under such plan*." 11 U.S.C. § 1329(a) (emphasis added). Indeed, it is "well settled that 'completion of payments' under this provision occurs when the debtor pays *to the trustee* the full amount required by the confirmed plan." *Gibson*, 582 B.R. at 20 (citations omitted). Thus, the payments "under such plan" are the debtor's payments to the trustee.

The mandatory form plan here gave Debtors two choices with respect to their post-petition mortgage payments – either "pay direct . . . or . . .Trustee will pay creditor." These two choices cannot mean the same thing, or why even have a choice? Thus, the logical line of demarcation is that "pay direct" means "provided for by the Plan" while "Trustee will pay creditor" means "payments under the plan."

The very dilemma raised here (what does "under the plan" mean) was discussed by the Ninth Circuit Bankruptcy Appellate Panel ("BAP") when it determined that the Code does not prohibit direct payments to creditors in *Giesbrecht v. Fitzgerald* (*In re Giesbrecht*), 429 B.R. 682 (9th Cir. BAP 2010). In reaching its ultimate conclusion that the structure of Chapter 13's statutory provisions do not require that all payments to creditors be made through a Chapter 13 trustee, the BAP carefully considered what "under the plan" means in §§ 1322 and 1326,[8] and relied in large part on *Cohen v. Lopez* (*In re Lopez*), 372 B.R. 40 (9th Cir. BAP 2007), *aff'd* 550 F.3d 1202 (9th Cir. 2008).

In *Lopez*, the bankruptcy court confirmed a plan permitting the debtor to directly make ongoing "maintenance payments" to the creditor secured by a deed of trust on his residence while

---

[8] Section 1326(c) provides that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors *under* the plan." 11 U.S.C. § 1326(c) (emphasis added).

8

simultaneously allowing him to pay the pre-petition arrears to the same creditor through the trustee. The trustee appealed, contending he should disburse both the maintenance as well as the default cure payments, and calculate his fees under 28 U.S.C. § 586(e)(2) on all such amounts. *Lopez* rejected the trustee's arguments and affirmed the bankruptcy court's decision.

The *Lopez* decision is detailed and, as the Court of Appeals noted when it adopted the BAP's opinion as its own, "well-reasoned." 550 F.3d 1202 (9th Cir. 2008). The Panel focused on the statutory provisions related to trustee compensation, 28 U.S.C. § 586(e)(2), as well as the Code provisions that create differences in plans under Chapters 12 and 13. *Lopez*, 372 B.R. at 44–47. The BAP explained that Section 1322(a)(1) "merely requires that the debtor must submit enough money from his future earnings to "the supervision and control of the trustee" as is necessary to fund the plan. Section 1322(a)(1) says nothing else, though, about what exactly must be paid through the plan." *Lopez,* 372 B.R. at 51.

As to Section 1326(c), *Lopez* instructs that a "plain reading of this provision leads to the conclusion that Congress intended that some debts other than those specifically enumerated in Section 1326(a)(1) could also be paid by the debtor outside the plan, so long as either the plan itself or the order confirming the plan allows it." *Id.* at 52.

Ultimately, *Lopez* validated the cure of pre-petition defaults to a secured creditor by a Chapter 13 debtor's plan payments disbursed by the trustee and on which the trustee would calculate a fee, but with the post-petition ongoing payments made directly by the debtor, bypassing the trustee and the trustee's fee. The Panel concluded that simply because Congress intended for Chapter 13 trustee's fees to be paid from plan payments did not "inherently lead to a conclusion that *all* payments must therefore be made under the plan." *Lopez*, 372 B.R. at 55 (emphasis in original).

While *Giesbrecht* and *Lopez* do not directly address the issue presented here, the Court finds that their analyses of what "under the plan" means to be instructive, and similarly concludes that Section 1328 allows debtors to pay their post-petition mortgage payments "outside the plan,

9

so long as either the plan itself or the order confirming the plan allows it." That is precisely what Debtors did here – they checked the appropriate box on the model form plan to advise the creditor that they would not be paying the post-petition payments "under the plan" but would instead "pay direct to [the] creditor."

Finally, the Court notes that the cases concluding that "under the plan" includes direct payments reason that "provided for by the plan" is an expansive concept that includes claims merely mentioned by the plan and thus "payments under the plan" must be similarly wide. These cases also view the debtor, instead of the trustee, as disbursing agents under the plan and therefore direct payments are also under the plan. Respectfully, however, these cases ignore that historically the term "payments under the plan," as used in Section 1328(a), have been understood to mean a debtor's payments to a trustee. The only thing that has changed is that a new disclosure requirement, Rule 3002.1, was recently adopted. This Court agrees with *Gibson* that Rule 3002.1 is being misapplied by courts that deny discharges and dismiss cases based solely on direct pay post-petition mortgage defaults.

**B. The Scope and Purpose of Rule 3002.1 Does Not Support Dismissal**

Section 1322(b)(5) allows Chapter 13 debtors to cure a default and maintain payments on a home mortgage over the course of the debtor's plan.[9] Rule 3002.1, enacted in 2011, was designed to aid the implementation of § 1322(b)(5) by requiring creditors to give notice of a

---

[9] That section provides:
    (a)The plan—
        . . .
        (2) shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;
        . . .
    (b)Subject to subsections (a) and (c) of this section, the plan may—
        . . .
        (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
11 U.S.C. § 1322(b)(5).

change in the payment amount due under a mortgage during the Chapter 13 case. The Rule is "designed to insure that individual debtors and trustees obtain information necessary to deal appropriately with creditor claims." Eugene R. Wedoff, *Proposed New Bankruptcy Rules on Creditor Disclosure and Creditor Enforcement of the Disclosers – Open for Comment*, 83 Am. Bankr. L.J. 579, 582 (2009); *see also* 9 COLLIER ON BANKRUPTCY ¶ 3002.1.[1] (Richard Levin & Henry J. Sommer eds., 16th ed.) (The rule was implemented to prevent unexpected mortgage defaults when a chapter 13 case is completed and closed).

The Rule is a "procedural mechanism designed to effectuate the Chapter 13 policy of providing debtors with a 'fresh start.'" *In re Thongta*, 480 B.R. 317, 319 (Bankr. E.D. Wis. 2012) *citing In re Sheppard*, 2012 WL 1344112, at *2, (Bankr. E.D. Va. April 17, 2012). It applies regardless of whether there is a pre-petition arrearage to be cured or whether the trustee or the debtor pays the post-petition mortgage payments. The Rule requires a creditor that holds a lien on the debtor's principal residence to disclose, in response to the trustee's notice of final cure payment, the status of the debtor's post-petition mortgage payments. Rule 3002.1 provides:

> (f) NOTICE OF FINAL CURE PAYMENT. Within 30 days after the debtor **completes all payments under the plan**, the trustee shall file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount **required to cure any default on the claim**. The notice shall also inform the holder of its obligation to file and serve a response under subdivision (g).

(emphasis added). A creditor may respond to this notice as directed in Rule 3002.1(g).[10]

---

[10] Rule 3002.1(g) provides:
(g) RESPONSE TO NOTICE OF FINAL CURE PAYMENT. Within 21 days after service of the notice under subdivision (f) of this rule, the holder shall file and serve on the debtor, debtor's counsel, and the trustee a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code. The statement shall itemize the required cure or post[-]petition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f).

11

Before Rule 3002.1 was adopted, debtors could emerge from bankruptcy with previously unknown but significant post-petition mortgage obligations because mortgage creditors, wary of violating the automatic stay, would not communicate with debtors about post-petition charges or loan changes. This was a persistent problem in Chapter 13, leading some courts to combat the problem by adopting local rules requiring mortgage lenders to disclose all post-petition charges. *Thongta*, 480 B.R. at 319 (*citing In re Ramsey*, 421 B.R. 431, 435-36 (Bankr. M.D. Tenn. 2009)); *In re Rizzo-Cheverier*, 364 B.R. 532 (Bankr. S.D.N.Y. 2007); *In re Rathe*, 114 B.R. 253 (Bankr. D. Idaho 1990).

When a creditor responds to the Cure Notice as directed in Rule 3002.1(g), it is required to respond both as to "(1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code." The Court finds that that part of the creditor response concerning "cur[ing] the default" refers to payments made "under the plan" and the second part concerning being "otherwise current" applies to payments made outside the plan and direct by the debtors.

Further bolstering this conclusion is the fact that before Rule 3002.1 was adopted, where a debtor was making post-petition mortgage payments direct to the creditor, the trustee typically had no information as to whether the debtor was current on those payments. The trustee might only learn of payment defaults if a motion for stay relief or other paper was filed with the Court. There is no Bankruptcy Code provision or Rule that requires a debtor to report a default on direct payments. As noted by *Gibson*, it "is safe to say that from 1978 until very recently, countless Chapter 13 debtors received a discharge despite an uncured default in payments to a creditor made direct by the debtor, either because the trustee was unaware of the default or because a default on direct plan payments was not viewed as a basis to seek dismissal without discharge." *Gibson*, 582 B.R. at 18. Instead, once a Chapter 13 trustee disbursed all payments they received, discharges were "routinely entered in Chapter 13 cases without regard to whether the debtor has

12

completed payments directly to creditors." Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 349.1, at ¶ 29, Sec. Rev. June 17, 2004, www.Ch13online.com (last visited March 28, 2019). Finally, the Court notes that the enactment of a procedural rule regardless of whether it was "designed to effectuate the Chapter 13 policy of providing debtors with a 'fresh start'" cannot override the Bankruptcy Code. 28 U.S.C. § 2075. Any "conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code." *United States v. Towers (In re Pac. Atl. Trading Co.)*, 33 F.3d 1064, 1066 (9th Cir. 1994).

It would be incongruous to dismiss a case without discharge after the Plan's otherwise successful completion when Rule 3002.1 was designed to be a rule of creditor disclosure, not a procedure for denial of discharge.

### 1. Rule 3002.1's Enforcement Mechanism is Directed at Noncompliant Creditors, Not Debtors

Notably, the only enforcement mechanism in Rule 3002.1 is directed at non-compliant creditors who fail to properly disclose mortgage payment changes. Rules 3001(c)(2)(D) and 3002.1(i)[11] "employ the same enforcement mechanism for required disclosure – generally, the potential for a creditor being barred from introducing at a later hearing the information that was not timely provided, as well as reimbursing the debtor for reasonable expenses and attorneys' fees, with other relief in the court's discretion…These sanctions are modeled after those for failure to make ordered discovery under Fed.R.Civ.P. 27." Eugene R. Wedoff, *Proposed New Bankruptcy*

---

[11] Rule 3002.1(i) provides:
    (i) Failure to Notify. If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:
        (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
        (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.
Federal Rule of Bankruptcy Procedure 3002.1.

*Rules on Creditor Disclosure and Creditor Enforcement of the Disclosers – Open for Comment*, 83 Am. Bankr. L.J. at 584. The Rule could have specified a penalty or consequence for a debtor with delinquent post-petition payments, but it did not. That is because the principal purpose of this Rule is creditor disclosure including "the scope and timing of the information required, the mechanism for determination of mortgage status during a Chapter 13 case, and the extent of sanctions for *creditor* non-disclosure." *Id.* (emphasis added). This Rule, which is directed at creditors and was intended to shield debtors, should not be used as a sword to harm debtors by denying their discharges.

### C. No Provision of the Code or Rules Requires Automatic Dismissal Without Discharge as a Sanction for Defaulted Direct Payments

A court may for cause convert or dismiss a case, whichever is in the best interests of creditors and the estate, when there is a "material default by the debtor with respect to a term of a confirmed plan." 11 U.S.C. § 1307(c)(6). Trustee Brown argues, without much enthusiasm, that this case should be dismissed under § 1307(c)(6) and without entry of discharge under § 1328.

Once a debtor has completed their payments to the trustee, Congress has established few final hurdles before a debtor receives their discharge under Section 1328(a). A debtor must only certify that they have paid all domestic support obligations and completed a Personal Financial Management Course. These certifications are accomplished using Official Form 423, Certification About a Financial Management Course, and Local Form 2084-6, Certificate of Eligibility for Chapter 13 Discharge After Completion of Plan Payments. If Congress believed it important for a debtor to certify that all post-petition mortgage payments be current, it would have so stated.

Nothing in the Code or Rules, however, suggests that Section 1328(a) should be construed in a way that would automatically transform an outside-the-plan payment default into grounds for dismissal under Section 1307(c)(6) without discharge, especially when all payments to the trustee

have been completed. This Court instead agrees with *Gibson*, which held that at "most, whether a Chapter 13 debtor's failure to make direct payments warrants denial or revocation of a discharge should be determined on a case-by-case basis, under other sections of the Bankruptcy Code, taking into account the debtor's state of mind and the effect on creditors." *Gibson,* 582 B.R. at 23. The facts here are significantly different from other cases where a debtor's failure to make post-petition mortgage payments were grounds to revoke a Chapter 13 discharge. *See e.g.*, *In re Gonzales*, 532 B.R. 828 (Bankr. D. Colo. 2015). In *Gonzales*, there was an undisclosed post-petition mortgage default of nearly $50,000 and, because there was a second mortgage, entry of the standard discharge would effectuate the strip-off of that second mortgage. Accordingly, the court found that discharge under those circumstances would unfairly harm the second lien holder. Here, there is no evidence, much less argument, that Debtors acted inequitably, or that secured or unsecured creditors were harmed. Indeed, Debtors appear to have made nearly four years of post-petition mortgage payments between the December 2013 filing date and September 2017.[12] This mortgage debt is already statutorily excepted from discharge by § 1328(c). Upon default, the secured creditor was free to seek stay relief to recover its collateral. It still may do so. Denying Debtors' discharge under these facts would be excessively harsh.

**D. Dismissal for Defaulted Direct Payments Alone is Fundamentally Unfair**

The principal purpose of the Bankruptcy Code is to grant a "'fresh start'" to the "'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.* (*In re Marrama*), 549 U.S. 365, 367 (2007) (citation omitted). Debtors seeking relief under Chapter 13 commit to pay their projected disposable income over a three- to five-year period. The fresh start afforded by their discharge "is the essence of modern bankruptcy law." David Cox, *Don't Move the Goalposts – Section 1328 Should Not Deny Discharge to Debtor Who Completes Payments to Trustee, But Is*

---

[12] The Court does not have an actual record of Debtors' post-petition mortgage payments because the secured creditor failed to comply with Rule 3002.1(g)'s requirement that it attach an itemized statement of account.

15

*Behind on Direct Payments*. 37 Am. Bankr. Inst. J. 20 (May 2018) citing H.R. Rep. No. 95-595, at 117 (1977). The reason for a default on payments to be made directly to a secured creditor outside of the plan may have nothing to do with whether a debtor has completed all payments under the plan and has paid unsecured creditors what they would be entitled to under the plan, or, at a minimum the amount that the unsecured creditors would have received in a Chapter 7 liquidation, which is a requirement to confirm the Chapter 13 plan.

A secured creditor who is receiving direct payments under Section 1322(b)(5) is not materially affected by the Chapter 13 discharge. It has remedies should the debtor fail to make the regular mortgage payments outside of the plan.[13] A secured creditor, once the plan has been confirmed, can still file a motion for relief from the automatic stay under 11 U.S.C. § 362 for the debtor's failure to pay the secured creditor outside the plan, which would be a post-petition, post-confirmation default. The secured creditor also retains its interest in the subject collateral and can be paid after a foreclosure. Further, while the debtor makes the payments under the plan, the pre-petition arrears owing to the secured creditor are being paid through the plan.

The debtor, on the other hand, may have any number of reasons for defaulting on the mortgage payments that were to have been paid outside the plan. For example, there could be a change in financial condition, such as loss of employment. Regardless of the circumstance, it is also possible, as happened here, that the Debtors make all the payments required through the confirmed plan, but a delinquency in the mortgage payments occurs after completion of the plan

---

[13] The Court has previously noted that before the change in Rule 3002.1 in 2011, a debtor could emerge from a Chapter 13 bankruptcy with a significant mortgage arrearage if the debtor failed to keep the payments current outside the plan. The Court surmised that some Chapter 13 creditors were wary of the continuing automatic stay and such a default may have gone unreported to the Court or the Chapter 13 trustee because of the creditor's fear. But simply because the creditor may have a fear, and fails to assert its rights, that does not mean that a debtor should be denied a discharge after having made the payments to satisfy the other obligations under the plan, including payments for unsecured creditors. The secured creditor can request relief from the automatic stay and the secured creditor also retains its interest in the underlying collateral.

16

duration, but before the secured creditor responds to the Chapter 13 trustee's inquiry under Rule 3002.1.

The *Amended First Modified Plan* was confirmed by stipulated order on November 28, 2016 and increased the total number of months for the plan duration from thirty-one to forty-one months. Dkt. No. 76. The forty-first month was scheduled to be May 2017.[14] Counsel for the secured creditor filed a Response to the Trustee's Notice of Final Cure Payment on May 1, 2018 and stated that the post-petition mortgage payments are in default for September 2017. Curiously, that date is approximately four months *after* the Debtors should have made their last payment to Trustee Brown.

Trustee Brown acknowledges that Debtors made all payments that were required to be paid to his office, yet he seeks dismissal of the bankruptcy case without a discharge. This is a draconian and unfair result based on the facts of this case where Debtors have made all the payments required under the confirmed Amended Modified Chapter 13 plan and apparently did not default on their post-petition mortgage payments until *after* the 41-month plan was complete, i.e., the creditor's Response to Trustee's Notice of Final Cure of Prepetition Arrears on Mortgage Claim reflects a default date that was beyond the plan term. Especially because the secured creditor received the benefit of the Chapter 13 plan by receiving payments to cure arrears of over $15,000 on the mortgage. The secured creditor also retained, and continues to retain, its lien on the subject real property, and once this case is closed, will be able to foreclose under state law. The Court does not see how the secured creditor has been harmed in this case. In fact, the only ones who will be harmed are Debtors who have made all their Chapter 13 plan payments if they do not receive their Chapter 13 discharge. Finally, denying Debtors' discharge would be non-sensical here given that Arizona is an anti-deficiency state, meaning that the creditor of Debtors'

---

[14] There is no indication on the docket that the Debtors did not timely make their forty-first payment under the amended plan.

primary residence only ever had *in rem*, not *in personam*, rights and remedies.[15] It never would have received more distributions whether inside or outside of bankruptcy. Meanwhile, every other creditor received exactly what the Plan proposed to pay them through Trustee Brown. [16]

The Court recognizes that Debtors in general may have other options, provided they are able to meet the requirements identified in the particular statute under the Code. Debtors might be able to seek a hardship discharge under 11 U.S.C. § 1328(b). However, a hardship discharge is limited to a specific timeframe. "[A]t any time after the confirmation of the plan . . . the court may grant a discharge to a debtor that has not completed payments under the plan. . . ." 11 U.S.C. § 1328(b). Debtors could also seek to further modify or amend the confirmed plan under § 1329. But this option is also limited by a temporal element. The confirmed plan can last no longer than sixty months from the date of the first payment. 11 U.S.C. § 1325(b)(4)(A)(ii). Also, the plan cannot be modified after completion of the payments under such plan. However, Debtors did not request any alternative relief, therefore, the Court will not engage in speculative analysis to determine whether such relief is appropriate.

### III. CONCLUSION

Trustee Brown argued that Debtors have defaulted on a material term of the confirmed Plan by failing to complete all required payments, rendering them ineligible for a discharge. But Debtors did pay all payments required to be paid to his office. There is no allegation, much less evidence, of gamesmanship, bad faith, or other mischief with respect to the post-confirmation mortgage payments. Further, in the event of a default, this creditor always was able to seek stay relief to recover its collateral in satisfaction of its claim. Moreover, nothing in the Code or Rules

---

[15] Arizona's anti-deficiency statute, codified at Arizona Revised Statutes, Sections 33-814.G and 33-729.A, prevents a lender from seeking a deficiency judgment after foreclosure when the mortgage loan was made to help purchase a home on property less than 2.5 acres in size and less than two "dwelling units."

[16] There is no evidence or argument that Debtors have engaged in gamesmanship or misrepresented their expenses in a scheme to underpay their unsecured creditors.

18

supports dismissal. Under these circumstances the Court finds dismissal without discharge to be an unnecessarily draconian result.

As an alternative to seeking dismissal in future similar cases, Trustee Brown is authorized to file Notices of Completed Plan allowing Chapter 13 discharges to be entered when all payments to his office have been paid even though post-petition mortgage payments may be delinquent. Of course, creditors and Chapter 13 Trustees may always move to deny a discharge if evidence of wrongdoing, fraud or other grounds exist. Accordingly,

**IT IS ORDERED** denying the Chapter 13 trustee's Motion to Dismiss.

**IT IS FURTHER ORDERED** directing Debtors to complete and file Local Form 2084-6, Certificate of Eligibility for Chapter 13 Discharge After Completion of Plan Payments, after which Trustee Brown must file his Notice of Completed Plan allowing the Chapter 13 discharge to be entered in this case.

**DATED AND SIGNED ABOVE**.